UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 02-408 (DWF/SRN)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| v. | ) | AFFIDAVIT OF |
| | ) | JACQUELINE TSCHIDA |
| VICTOR STANLEY WILCOX, | ) | |
| | ) | |
| DEFENDANT. | ) | |

STATE OF MINNESOTA )
) ss.
COUNTY OF HENNEPIN )

Jacqueline Tschida, being duly sworn upon oath, deposes and states as follows:

1. I am a Special Agent with the Internal Revenue Service, Criminal Investigation Division, and have been so employed for twelve years. My duties include investigating violations of the money laundering statutes codified at Title 18, United States Codes, §§ 1956 and 1957. I make this affidavit upon personal knowledge and upon information provided to me by other Special Agents of Internal Revenue Service, Criminal Investigation, and by United States Postal Inspectors.

2. This affidavit is made in support of a motion under Fed. R. Crim. P. 32.2(e) for a preliminary order of forfeiture with respect to funds contained in Wells Fargo Bank account number [redacted]2763, based on evidence that the funds in this

account are subject to forfeiture to the United States pursuant to 18 U.S.C. § 982(a)(1). As explained further below, the funds contained in this account are subject to forfeiture because they were involved in, or traceable to, money laundering in violation of 18 U.S.C. § 1956.

3. I am one of the case agents in the matter of *United States of America v. Victor Wilcox, et al.* As a result of my investigation, a United States grand jury sitting in the District of Minnesota returned a First Superseding Indictment against defendant Wilcox for mail fraud and money laundering arising out of an advance fee loan scheme. Specifically, the grand jury alleged that from May 4, 1998 through October 17, 2000, Mr. Wilcox and companies under his control purported to market Visa and MasterCard credit cards in the classified advertising sections of newspapers and periodicals circulated throughout the United States for a fee ranging from $49 to $129, but had no power or authority to deliver a credit card of any kind. In addition, Mr. Wilcox's advance fee loan business generally charged a monthly fee for a "membership" ranging from $9.00 to $19.00. Mr. Wilcox provided his telemarketers with script cards which misled people calling in response to Wilcox's ads that they would receive a credit card

if they paid Mr. Wilcox a fee. Mr. Wilcox stole more than $2.7 million from tens of thousands of victims nationwide using this scheme.

4. On July 2, 2003, Victor Wilcox pled guilty to Count 11 of the First Superseding Indictment, charging him with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). Wilcox admitted that from May of 1998 through October 17, 2000, he devised a scheme and artifice to defraud that involved representing to individuals that, in return for an advance fee, he could "prequalify" them to receive a Visa or MasterCard, regardless of their credit history, when he had no power or authority to prequalify anybody to receive a credit card.

The defendant further admitted that from approximately May 4, 1999 through on or about June 9, 2000, he conspired with two of his codefendants to engage in financial transactions affecting interstate commerce with the proceeds of the fraud described in the immediately preceding paragraph, each of which financial transactions was designed to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of such fraud and knowing that the property and monies involved in each

transaction represented the proceeds of unlawful activity. The defendant admitted that the conspiracy to commit concealment money laundering violated 18 U.S.C. § 1956(h).

5. Defendant Lee Sumner Churchill has pled guilty to one count of false advertising for his role in the scam, and agreed to cooperate with the United States in its investigation and prosecution of Mr. Wilcox. On July 30, 2003, Lee Churchill attended a proffer session at the United States Attorney's Office at which he stated that he was a conduit for Mr. Wilcox's stolen money. Mr. Churchill opened bank accounts for Mr. Wilcox using Churchill's name, Social Security Number (SSN), and address to conceal the true nature of the ownership of these bank accounts.

6. Specifically, Lee Churchill opened Wells Fargo Bank {F/K/A Norwest Bank} account number [redacted]2763 for Mr. Wilcox. The account was opened on December 20, 1999 at the Hudson, Wisconsin branch. The name on the account was Lee Churchill D/B/A Credit Approval Services. The SSN used to open the account belonged to Lee Churchill.

7. Your affiant has analyzed the bank account records for Wells Fargo account number [redacted]2763. The majority (81%) of the deposits into this account were automated

clearing house (ACH) deposits, which represent customer credit card transactions from Mr. Wilcox's advanced fee scheme. The other deposits into the account consist of transfers from other bank accounts under Mr. Wilcox's control. Of the $1,175,769 deposits made in the year 2000, $946,616 represents proceeds from ACH Deposits. Your affiant knows from examining the bank records associated with the businesses charged in the First Superseding Indictment that Mr. Wilcox always withdrew fees and/or monthly membership charges directly from victims' accounts electronically via ACH transfers.

Your affiant has reviewed the bank records, including bank statements and ACH runs, associated with the account Mr. Churchill opened for Mr. Wilcox at Wells Fargo Bank. Your affiant has also reviewed bank records from Bremer Bank, at which institution the individual ACH transactions are batched or pooled for transfer to Mr. Churchill's account at Wells Fargo Bank. These records reflect that the sole source of funds contained in the account at the Wells Fargo Bank listed above is the $49-$69 monthly membership fees electronically transferred from Mr. Wilcox's victims nationwide. For example, your affiant has reviewed the ACH runs which reflect the components of a $11,099 ACH deposit to Wells Fargo Bank on

March 13, 2000. The ACH run, which your affiant obtained from Bremer Bank, confirms that every dollar of such transfer comes from the $49-$69 monthly fee charged to individual customers nationwide. The names of those customers are specifically reflected on the ACH run of approximately 1,400 victims of Mr. Wilcox's fraud.

8. The Wells Bank account number [redacted]2763 was closed on September 30, 2000.

9. Prior to the Internal Revenue Service and Postal Inspection's case against Mr. Wilcox, the Federal Trade Commission (FTC) was involved in investigating Mr. Wilcox's crimes. The FTC put a court-ordered financial restraint on the funds in Wells Fargo Bank account number [redacted]2763 in early 2000. The original document was not found probably due to the fact that the document is over seven years old. Neither the bank nor the FTC has the original financial restraint. The FTC, by means of the attached letter, indicates that it does not have an interest in restraining these funds anymore.

10. Based upon the foregoing, your affiant respectfully submits that the funds contained in Wells Fargo account [redacted]2763 are subject to forfeiture to the United States

pursuant to 18 U.S.C. § 982(a)(1). Upon information and belief, the current balance of Wells Fargo account 400-0362763 is approximately $4,300.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Jacqueline K. Tschida

Jacqueline Tschida

Subscribed and sworn to before
me this 9th day of August, 2007

Kathryn M. Weston

Notary Public

KATHRYN M. WESTON
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2010

UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
SOUTHWEST REGION

February 5, 2007

1999 Bryan St, Ste 2150
Dallas, TX 75201-6803

**James E. Elliott**
**Attorney**

Direct Dial
Phone: 214 979-9373
Fax: 214 953-3079
E-mail: jelliott@ftc.gov

Wells Fargo Bank
Domestic Collections
P.O. Box 3055
Portland, OR 97208
Attn: Linda Totzen

**Re: Wells Account [redacted]2763; Lee Churchill DBA "Credit Approval Services"**

Dear Ms. Totzen:

I was the lead attorney in the Federal Trade Commission's action in the United States District Court for the Southern District of Texas entitled *FTC v. Churchill*, No. G-00-324. Pursuant to a temporary restraining order and/or a stipulated preliminary injunction, the assets in the above-referenced account were frozen.

In April of 2001, the case was settled and a final stipulated judgment and order was entered against each defendant. As a result of the order's entry, the asset freeze provisions terminated.

Should you have any questions, do not hesitate to contact me.

Very truly yours,

James E. Elliott

United States District Court
Southern District of Texas
FILED

APR 20 2001

Michael N. Milby, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>Plaintiff,<br><br>v.<br><br>**LEE SUMNER CHURCHILL,**<br>d/b/a Credit Approval Service,<br><br>**TROY TIMOTHY KISLING,**<br>d/b/a Credit Approval Service,<br><br>**VICTOR STANLEY WILCOX,**<br>d/b/a Credit Approval Service, and<br><br>**BELINDA SWEENEY,**<br>d/b/a Credit Approval Service,<br><br>Defendants. | **Civil Action No.: G-000-324**<br><br>JUDGE HITTNER |

**STIPULATED FINAL JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND MONETARY RELIEF REGARDING VICTOR STANLEY WILCOX**

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), commenced this action by filing a Complaint pursuant to Sections 13(b) and 19 of



140

the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, charging the defendants with engaging in unfair or deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and the FTC's Telemarketing Sales Rule, 16 C.F.R. Part 310.

Now the Commission and defendant Victor Stanley Wilcox agree to a settlement of this action without trial or adjudication of any issue of law or fact herein and without the defendant admitting liability for any of the violations alleged in the complaint or for any wrongdoing whatsoever. The Commission and the defendant consent to entry of this Final Order without trial or adjudication of any issue of law or fact herein.

Upon the consent of the parties hereto, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

**FINDINGS**

1. This is an action by the Commission instituted under Sections 5, 13(b), and 19 of the Federal Trade Commission Act, 15 U.S.C. §§ 45, 53(b), and 57b, and the Telemarketing Sales Rule, 16 C.F.R. Part 310. The Complaint seeks both permanent injunctive relief and consumer redress for alleged deceptive acts or practices by the defendants in connection with the promotion, offering for sale and sale of services relating to credit cards, loans, or other

extensions of credit. The Complaint states a claim upon which relief may be granted against the defendant under Sections 5, 13(b), and 19 of the FTC Act, and the Telemarketing Sales Rule.

2. This Court has jurisdiction over the subject matter of this case and has jurisdiction over the defendant. Venue in the Southern District of Texas is proper.

3. The activities of the defendant are in or affecting commerce, as commerce is defined in 15 U.S.C. § 44.

4. Defendant waives all rights to seek judicial review or otherwise challenge or contest the validity of this Order. Defendant also waives any claim that he may hold under the Equal Access to Justice Act, 28 U.S.C. § 2412 (as amended), concerning the prosecution of this action to the date of this Order. Defendant shall bear his own costs and attorneys fees.

5. Entry of this Order is in the public interest.

6. This Order is remedial in nature and shall not be construed as the payment of a fine, penalty, punitive assessment, or forfeiture.

## DEFINITIONS

For purposes of this Final Judgment and Order for Permanent Injunction and Monetary Relief, the following definitions shall apply:

1. **"Credit-related goods or services"** means any good or service which is advertised, offered for sale, or sold to consumers as a method by which consumers may establish or obtain any credit or credit device, including but not limited to, credit cards, loans, or financing; or as a method to restore, repair, or improve derogatory information contained in consumers' credit reporting files; or as a method to consolidate or liquidate debts.

2. **"Telemarketing"** shall mean any business activity (which includes, but is not limited to, initiating or receiving telephone calls, managing others who initiate or receive telephone calls, operating an enterprise that initiates or receives telephone calls, owning an enterprise that initiates or receives telephone calls, or otherwise participating as an officer, director, employee or independent contractor in an enterprise that initiates or receives telephone calls) that involves attempts to induce consumers to purchase any item, good, service, partnership interest, trust interest or other beneficial interest, to make a charitable contribution, or to enter a contest for a prize, by means of telephone sales presentations, either exclusively or in conjunction with the use of other forms of marketing. *Provided* that the term "telemarketing" shall not include transactions that are not completed until after a face-to-face contact between the seller or solicitor and the consumers solicited.

*Provided further*, that for the purposes of Section IIA, the definition of telemarketing shall be consistent with 16 C.F.R. § 310.2.

3. "**Defendant**" means Victor Stanley Wilcox and his successors, assigns, officers, directors, agents, servants, employees, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division or other device.

4. "**Person**" means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

5. "**Assets**" means all real and personal property of any defendant, or held for the benefit of any defendant, including but not limited to, "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," or "notes" (as these terms are defined in the Uniform Commercial Code), lines of credit, and all cash, wherever located.

6. "**Document**" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a) and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which the information can be obtained and translated, if necessary, through detection devices into

reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

7. **"Assisting others"** means knowingly providing any of the following goods or services to another entity: (1) performing customer service functions, including, but not limited to, receiving or responding to consumer complaints; (2) formulating or providing, or arranging for the formulation or provision of, any telephone sales script or any other marketing material; (3) providing names of, or assisting in the generation of, potential customers; or (4) performing marketing services of any kind.

## ORDER

## I. PERMANENT BAN

**IT IS THEREFORE ORDERED** that defendant Victor Stanley Wilcox, and his successors, assigns, officers, directors, agents, servants, employees, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division or other device, are hereby permanently restrained and enjoined from engaging in, receiving any remuneration of any kind whatsoever from, or holding any ownership interest, share, or stock in,

or serving as an officer, director, trustee, or general manager of, any business entity engaged in, in whole or in part in:

1. Advertising, marketing, promoting, offering for sale, or selling any credit-related goods or services, or assisting others engaged in the same; or

2. Telemarketing or assisting others engaged in telemarketing.

## II. PROHIBITED BUSINESS ACTIVITIES

**IT IS FURTHER ORDERED** that, with respect to the advertising, marketing, promoting, offering for sale, or sale of any products or services, or assisting others engaged in the advertising, marketing, promoting, offering for sale, or sale of any products or services, defendant Victor Stanley Wilcox, and his successors, assigns, officers, directors, agents, servants, employees, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division or other device, are hereby permanently restrained and enjoined from:

A. Failing to comply with the Telemarketing Sales Rule, 16 C.F.R. Part 310, attached hereto as Appendix A, or the Telemarketing Sales Rule as it may hereafter be amended, including, but not limited to:

1. Requesting or receiving payment of any fee or consideration in advance of obtaining or arranging an extension of credit when defendant has guaranteed or represented a high likelihood of success in obtaining or arranging an extension of credit; or

2. Misrepresenting that consumers will receive a credit card, such as a Visa or MasterCard, in return for the payment of a fee;

B. Misrepresenting, expressly or by implication, that after paying a fee, consumers will receive a credit card or other extension of credit;

C. Misrepresenting, expressly or by implication, any fact material to a consumer's decision to purchase credit-related goods or services from defendant; and

D. Misrepresenting, expressly or by implication, any fact material to a consumer's decision to purchase products or services from defendant.

Nothing in this Section or in any other Section of this Order shall void any of the ban provisions set forth in Section I of this Order.

## III. CUSTOMER LISTS

**IT IS FURTHER ORDERED** that defendant Victor Stanley Wilcox, and his successors, assigns, officers, directors, agents, servants, employees, and those persons in active concert or participation with them who receive actual notice of

this Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division or other device, are permanently restrained and enjoined from selling, renting, leasing, transferring, or otherwise disclosing the name, address, telephone number, credit card number, bank account number, e-mail address, or other identifying information of any person whom defendant charged a fee for arranging for the provision of a credit card, loan, or other extension of credit. *Provided* that defendant may disclose such identifying information to a law enforcement agency or as required by any law, regulation, or court order.

## IV. JUDGMENT

**IT IS FURTHER ORDERED** that judgment is hereby entered against defendant Victor Stanley Wilcox in the amount of TWO MILLION EIGHT HUNDRED THOUSAND DOLLARS ($2,800,000.00) for consumer redress and/or disgorgement, and for paying any attendant expenses of administration of any redress fund, less any redress and/or disgorgement amounts paid to the Commission by any other party to this matter. Any funds received by the Commission pursuant to this Section shall be deposited in an account maintained by the Commission or its agent. Upon the final disposition of this action, said assets shall be either: (1) distributed as redress to consumers, or (2) paid to the

U.S. Treasury, if such distribution is deemed impractical. If the Commission, in its sole discretion, determines that redress is practical, it shall develop a plan for the disbursement of funds. In establishing this plan, the Commission shall have full and sole discretion to determine the criteria and parameters for participation by injured consumers in a redress program, and may delegate any and all tasks connected with such redress program to any individuals, partnerships, or corporations, and pay the fees, salaries, and expenses incurred thereby in carrying out said tasks from the funds received pursuant to this Section.

## V. RECORD KEEPING PROVISIONS

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Order, defendant Victor Stanley Wilcox, and his successors, assigns, officers, directors, agents, servants, employees, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division or other device, in connection with any business where defendant is the majority owner of the business or directly or indirectly manages or controls the business, is hereby restrained and enjoined from failing to create, and from failing to retain for a period of three (3) years following the date of such creation, unless otherwise specified:

A. Books, records and accounts that, in reasonable detail, accurately and fairly reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

B. Records accurately reflecting: the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable. The businesses subject to this Section shall retain such records for any terminated employee for a period of two (2) years following the date of termination;

C. Records containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, for all consumers to whom such business has sold, invoiced or shipped any goods or services, or from whom such business accepted money or other items of value;

D. Records that reflect, for every consumer complaint or refund request, whether received directly or indirectly or through any third party:

(1) the consumer's name, address, telephone number and the dollar amount paid by the consumer;

(2) the written complaint or refund request, if any, and the date of the complaint or refund request;

(3) the basis of the complaint, including the name of any salesperson complained against, and the nature and result of any investigation conducted concerning any complaint;

(4) each response and the date of the response;

(5) any final resolution and the date of the resolution; and

(6) in the event of a denial of a refund request, the reason for the denial; and

E. Copies of all sales scripts, training materials, advertisements, or other marketing materials utilized; *provided* that copies of all sales scripts, training materials, advertisements, or other marketing materials utilized shall be retained for three (3) years after the last date of dissemination of any such materials.

## VI. DISTRIBUTION OF ORDER BY DEFENDANT

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Order, defendant Victor Stanley Wilcox shall:

A. Provide a copy of this Order to, and obtain a signed and dated acknowledgment of receipt of same from, each officer or director, each

individual serving in a management capacity, all personnel involved in responding to consumer complaints or inquiries, and all sales personnel, whether designated as employees, consultants, independent contractors or otherwise, immediately upon employing or retaining any such persons, for any business where defendant is the majority owner of the business or directly or indirectly manages or controls the business.

B. Maintain for a period of three (3) years after creation, and upon reasonable notice, make available to representatives of the Commission, the original signed and dated acknowledgments of the receipt of copies of this Order, as required in Paragraph A of this Section.

## VII. COMPLIANCE REPORTING BY DEFENDANT

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this Order may be monitored:

A. For a period of five (5) years from the date of entry of this Order, defendant Victor Stanley Wilcox shall notify the Commission of the following:

(1) Any changes in defendant's residence, mailing addresses, and telephone numbers, within ten (10) days of the date of such change;

(2) Any changes in defendant's employment status (including self-employment) within ten (10) days of such change. Such notice shall

include the name and address of each business that defendant is affiliated with or employed by, a statement of the nature of the business, and a statement of defendant's duties and responsibilities in connection with the business or employment; and

(3) Any proposed change in the structure of any business entity owned or controlled by defendant such as creation, incorporation, dissolution, assignment, sale, merger, creation, dissolution of subsidiaries, proposed filing of a bankruptcy petition, or change in name or address, or any other change that may affect compliance obligations arising out of this Order, thirty (30) days prior to the effective date of any proposed change; *provided*, however, that, with respect to any proposed change in the corporation about which defendant learns less than thirty (30) days prior to the date such action is to take place, defendant shall notify the Commission as soon as is practicable after learning of such proposed change;

B. One hundred eighty (180) days after the date of entry of this Order, defendant shall provide a written report to the FTC, sworn to under penalty of perjury, setting forth in detail the manner and form in which the defendant has complied and is complying with this Order. This report shall

include but not be limited to:

(1) Defendant's then current residence addresses and telephone numbers;

(2) Defendant's then current employment, business addresses and telephone numbers, a description of the business activities of each such employer, and defendant's title and responsibilities for each employer;

(3) A copy of each acknowledgment of receipt of this Order obtained by defendant pursuant to Section VI;

(4) A statement describing the manner in which defendant has complied and is complying with the

(a) Injunctive provisions in Sections I and II of the Order; and

(b) Monetary relief provisions in Section IV of the Order;

C. Upon written request by a representative of the Commission, defendant shall submit additional written reports (under oath, if requested) and produce documents on fifteen (15) days' notice with respect to any conduct subject to this Order;

D. For the purposes of this Order, defendant shall, unless otherwise directed by the Commission's authorized representatives, mail all written notifications to the Commission to:

Regional Director
Southwest Region
Federal Trade Commission
Suite 2150, 1999 Bryan Street
Dallas, Texas 75201

Re: FTC v. Lee Sumner Churchill, d/b/a Credit Approval Service, et al. Civ. Action No. G-000-324

E. For the purposes of this Section, "employment" includes the performance of services as an employee, consultant, or independent contractor; and "employers" includes any individual or entity for whom defendant performs services as an employee, consultant, or independent contractor; and

F. For purposes of the compliance reporting required by this Section, the Commission is authorized to communicate directly with defendant.

## VIII. COMMISSION'S AUTHORITY TO MONITOR COMPLIANCE

**IT IS FURTHER ORDERED** that the Commission is authorized to monitor defendant's compliance with this Order by all lawful means, including but not limited to, the following means:

A. The Commission is authorized, without further leave of court, to obtain discovery from any person in the manner provided by Chapter V of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 26-37, including the use of compulsory process pursuant to Fed. R. Civ. P. 45, for the purpose of

monitoring and investigating defendant's compliance with any provision of this Order;

B. The Commission is authorized to use representatives posing as consumers and suppliers to defendant, defendant's employees, or any other entity managed or controlled in whole or in part by defendant, without the necessity of identification or prior notice; and

C. Nothing in this Order shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49 and 57b-1, to investigate whether defendant has violated any provision of this Order or Section 5 of the FTC Act, 15 U.S.C. § 45.

## IX. ACCESS TO BUSINESS PREMISES

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Order, for the purpose of further determining compliance with this Order, defendant Victor Stanley Wilcox shall permit representatives of the Commission, within three (3) business days of receipt of written notice from the Commission:

A. Access during normal business hours to any office, or facility storing documents, of any business where defendant is the majority owner of the business or directly or indirectly manages or controls the business. In

providing such access, defendant shall permit representatives of the Commission to inspect and copy all documents relevant to any matter contained in this Order; and shall permit Commission representatives to remove documents relevant to any matter contained in this Order for a period not to exceed five (5) business days so that the documents may be inspected, inventoried, and copied; and

B. To interview the officers, directors, and employees, including all personnel involved in responding to consumer complaints or inquiries, and all sales personnel, whether designated as employees, consultants, independent contractors or otherwise, of any business to which Paragraph A of this Section applies, concerning matters relating to compliance with the terms of this Order. The person interviewed may have counsel present.

*Provided* that, upon application of the Commission and for good cause shown, the Court may enter an *ex parte* order granting immediate access to defendant's business premises for the purposes of inspecting and copying all documents relevant to any matter contained in this Order.

## X. ACKNOWLEDGMENT OF RECEIPT OF ORDER BY DEFENDANT

**IT IS FURTHER ORDERED** that, within five (5) business days after receipt by defendant Victor Stanley Wilcox of this Order as entered by the Court,

defendant shall submit to the Commission a truthful sworn statement, in the form shown on Appendix B hereto, that shall acknowledge receipt of this Order.

## XI. LIFT OF ASSET FREEZE

**IT IS FURTHER ORDERED** that the freeze of defendant Victor Stanley Wilcox's assets, imposed in the Preliminary Injunctions entered in this proceeding, shall be lifted upon the entry of this Final Judgment.

## XII. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that the Court shall retain jurisdiction of this matter for the purpose of enabling the parties to apply to the Court at any time for such further orders and directions as may be necessary or appropriate for the interpretation, modification or enforcement of this Order, or for the punishment of violations thereof.

The parties hereby consent to the terms and conditions of the Stipulated Final Judgment and Order for Permanent Injunction and Monetary Relief as set forth above and consent to entry thereof. Each party shall bear its own costs and attorney's fees.

**SO ORDERED**, this 20 day of Apr, 2001.

DAVID HITTNER
**UNITED STATES DISTRICT JUDGE**

**SO STIPULATED:**

James E. Elliott
Texas Bar No.06557100
James R. Golder
Texas Bar No. 08089520
Southwest Region
Federal Trade Commission
Suite 2150, 1999 Bryan Street
Dallas, Texas 75201
(214) 979-9373 (Elliott)
(214) 979-9376 (Golder)
(214) 953-3079 (facsimile)
**ATTORNEYS FOR PLAINTIFF**

Victor Stanley Wilcox
**DEFENDANT**

Jay T. Karahan
Texas Bar Card No. 11095600
Kuniansky, Karahan & Rozan
700 Post Oak Tower
5051 Westheimer
Houston, Texas 77056
**ATTORNEY FOR DEFENDANT**
**VICTOR STANLEY WILCOX**

The Exhibit(s) May

Be Viewed in the

Office of the Clerk